IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 18, 2013

## CURTIS LEE MAJORS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2006-D-3084     Cheryl A. Blackburn, Judge**

**No. M2012-01135-CCA-R3-PC - September 18, 2013**

The Petitioner, Curtis Lee Majors, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his convictions of tampering with evidence and simple possession and resulting effective fifteen-year sentence. On appeal, the Petitioner contends that he received the ineffective assistance of counsel. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

David M. Discenza and Kyle Mothershead, Nashville, Tennessee, for the appellant, Curtis Lee Majors.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Rob McGuire and Brett Gunn, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In November 2006, the Davidson County Grand Jury indicted the Petitioner for possession with intent to sell or deliver less than 0.5 grams of cocaine within 1,000 feet of a school, a Class B felony, and tampering with evidence, a Class C felony. We glean the following relevant evidence from this court's opinion of the Petitioner's direct appeal of his convictions: On the night of October 12, 2005, police officers executed a search warrant for an apartment in Nashville. State v. Curtis Lee Majors, No. M2007-01911-CCA-R3-CD,

2009 Tenn. Crim. App. LEXIS 390, at *2 (Nashville, May 21, 2009). Officer William Traughber testified at trial that he saw the Petitioner sitting at a table in the apartment's kitchen and that the Petitioner ran from the table and disappeared from view. Id. at *3. Officer Traughber heard a toilet flush "'instantaneous[ly],'" and two other officers arrested the Petitioner in the bathroom, which Officer Traughber estimated was fifteen to twenty feet from the kitchen. Id. at **3-4. Officer Traughber said that when he arrived in the bathroom, the commode's tank "'was still filling up where it had just been flushed'" and that the "'water [was] splattered on the seat.'" Id. at *4. However, the Petitioner's clothes were still on. Id. Officer Traughber found in the kitchen digital scales and a white powder that field tested as cocaine. Id. He gave Miranda warnings to the Petitioner, the Petitioner waived his rights, and the Petitioner admitted that the cocaine was his. Id. Officer Traughber asked the Petitioner what he had flushed down the toilet. Id. The Petitioner did not answer the question specifically but said, "'I snort. Repeatedly.'" Id. at *5.

Lieutenant William MacKall testified as an expert in narcotics investigations that, in his experience, suspects sometimes tried to flush narcotics down the toilet in an attempt to destroy evidence and that he was never able to recover powder cocaine from a toilet because the cocaine dissolved in the water. Id. at *6. He said that the only way police could recover the cocaine was if it was "'left on the rim of the toilet seat.'" Id. The jury convicted the Petitioner of simple possession as a lesser-included offense of possession with intent to sell or deliver but convicted him as charged of tampering with evidence. Id. at **6-7. After a sentencing hearing, the Petitioner received an effective fifteen-year sentence as a Range III, persistent offender. See id. at *18.

On appeal to this court, the Petitioner claimed that the evidence was insufficient to support the conviction for tampering with evidence, that the trial court gave an incorrect jury instruction regarding that offense, and that the trial court failed to apply a relevant mitigating factor to the sentence. Id. at *2. This court affirmed the Petitioner's conviction and sentence. Id. Our supreme court granted the Petitioner's application for permission to appeal and affirmed the judgments of this court. See State v. Majors, 318 S.W.3d 850 (Tenn. 2010).

Subsequently, the Petitioner timely filed a pro se petition for post-conviction relief, claiming that he received the ineffective assistance of counsel. The post-conviction court appointed counsel, and counsel filed an amended petition. Relevant to this appeal, the Petitioner alleged in the amended petition that he received the ineffective assistance of counsel because trial counsel failed to challenge the search warrant for lack of probable cause and failed to challenge Lieutenant MacKall's being allowed to testify as an expert.

At the evidentiary hearing, trial counsel testified in pertinent part that he graduated from law school in 2003 and had been practicing law nine years. At the time of the

Petitioner's trial, ninety percent of counsel's practice involved criminal law. Counsel said he reviewed the search warrant for the apartment and thought there were "problems with the search." However, counsel did not file a motion to suppress evidence seized pursuant to the search because the Petitioner was not a resident of the apartment and did not have standing to challenge the search. Counsel said that he asked the Petitioner if the Petitioner had been an overnight guest in the apartment and that he did not remember the Petitioner's answer. However, counsel said that, in any event, "my understanding was even as an overnight guest you're not entitled to . . . standing to object. . . . I just know that we looked at challenging everything we could and did not see a way to effectively challenge the search."

Counsel testified that he could not remember if the State revealed before trial that Lieutenant MacKall was going to testify as an expert. He acknowledged that he may not have voir dired Lieutenant MacKall about the officer's qualifications and background and that he may not have objected to the officer's testimony. Post-conviction counsel asked trial counsel why he failed to do so, and trial counsel answered, "Specifically what he was testifying to didn't connect the dots to what they were trying to prove. . . . He had nothing to contribute as far as what record, document, or thing was tampered with at the time."

On cross-examination, trial counsel testified that if he had been surprised by Lieutenant MacKall's being called as a witness at trial, he would have objected and either moved to exclude the officer's testimony or moved for a continuance. He acknowledged that in 2007, Davidson County judges routinely qualified Lieutenant MacKall as an expert for trials. Trial counsel also acknowledged that voir diring Lieutenant McKall could have called more attention to the officer's testimony. The State asked if counsel's failing to voir dire Lieutenant MacKall or attack his testimony on cross-examination was a strategic decision, and counsel answered, "That's accurate." Counsel acknowledged that his strategy was successful to some extent because the jury convicted the Petitioner of simple possession rather than the greater offense of possession with intent to sell or deliver. On appeal to the Tennessee Supreme Court, counsel argued that the evidence was insufficient to support the tampering with evidence conviction because the State failed to identify the tampered document, record, or "thing."

The Petitioner testified that on the night of his arrest, he was at the apartment "[v]isiting a lady friend" and that he was planning to spend the night. He said that "we was over there . . . drinking and talking, you know, having a good time," that he went to the bathroom, and that he heard a commotion. When he came out of the bathroom, the police told him to get on the floor. The Petitioner did as he was told, and an officer asked what he had been doing in the bathroom and what he had flushed. The Petitioner told the officer that he had used the bathroom and flushed the toilet. The officer handcuffed the Petitioner, "snatched" him up, took him to the kitchen, and sat him down at the table. The Petitioner

said that he visited his "lady friend" at the apartment at least once or twice per week and that "[e]very time I go over there and stay all night or something."

On cross-examination, the Petitioner testified that he lived with his mother but that he spent the night at the apartment to "kick it, have a good time." Upon being questioned by the post-conviction court, the Petitioner testified that he did not have a key to the apartment, did not receive mail there, and did not have clothes there. He said that the apartment was "her place" and acknowledged that he was just visiting.

Lieutenant William MacKall testified that he graduated with a bachelor's degree in criminal justice from the University of Tennessee at Martin and that he did not have any experience in psychology, chemical analysis, or dissolving drugs in water. However, at the time of the Petitioner's trial, Lieutenant MacKall had been involved in fifty to one hundred cases in which cocaine was put into a toilet.

Upon being questioned by the post-conviction court, Lieutenant MacKall explained his qualifications and experience as follows: He spent seven years as an undercover officer in the police department's Crime Suppression Unit in which he bought "street level drugs from street level drug dealers." Lieutenant MacKall served as the supervisor of that unit for three years. He returned to patrol for one year and then returned as the supervisor of the Crime Suppression Unit for three additional years. He said that he currently investigated narcotics-related crimes, focusing primarily on "large amounts of drugs, long-term investigations." Lieutenant McKall stated that he completed "ROCIC," a two-week school in Meridian, Mississippi. During that time, he received training on how to handle confidential informants, search warrants, and search warrant entry. He said that he also attended drug commander investigation school and studied for ten weeks at the FBI National Academy. He said that he had been involved with over two thousand search warrants and that "over ninety percent of the time when we knock and announce . . . you can hear the people running around . . . inside the area. Most every time . . . they try to destroy property . . . through the toilet." He also stated, "Because if the police [come], that's what they were going to do is dump the drugs in the water so it dissolves." He said that the only time he recovered powder cocaine from a toilet successfully occurred when the suspect tried to force nine ounces of cocaine wrapped in plastic "up the hole. And . . . he wasn't going to be able to flush that."

At the conclusion of Lieutenant MacKall's testimony, the Petitioner rested his case. The State did not call any witnesses. In a written order, the post-conviction court denied the petition for post-conviction relief. Regarding counsel's failure to challenge the validity of the search warrant, the post-conviction court noted that, pursuant to State v. Patterson, 966 S.W.2d 435 (Tenn. Crim. App. 1997), an overnight guest of a homeowner could have a

-4-

reasonable expectation of privacy in the home and, therefore, standing to challenge a search of the home. However, the post-conviction court found the Petitioner not credible when he claimed that he was an overnight guest in the apartment. Thus, the court concluded that counsel was not ineffective for failing to challenge the search warrant. Regarding counsel's failure to challenge Lieutenant MacKall's testifying as an expert at trial, the court determined that counsel's decision not to challenge the officer's qualifications or testimony was trial strategy. Thus, the court concluded that the Petitioner was not entitled to post-conviction relief.

## II. Analysis

On appeal, the Petitioner contends that he received the ineffective assistance of counsel because trial counsel incorrectly concluded that he did not have standing to challenge the search of the apartment and, therefore, failed to file a motion to exclude evidence obtained from the unreasonable search. The Petitioner also contends that he received the ineffective assistance of counsel because trial counsel failed to challenge Lieutenant MacKall's qualifications as an expert in narcotics investigations pursuant to Rule 702 or the prejudicial effect of the officer's testimony pursuant to Rule 403, Tennessee Rules of Evidence. The State argues that the Petitioner failed to show he received the ineffective assistance of counsel. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Turning to the instant case, the post-conviction court was correct in that an overnight guest in a residence or apartment has a "legitimate expectation of privacy in the premises sufficient to challenge the search and any resulting seizure." State v. Transou, 928 S.W.2d 949, 958 (Tenn. Crim. App. 1996) (citing Minnesota v. Olson, 459 U.S. 91 (1990)). However, the court discredited the Petitioner's claim that he was an overnight guest in the apartment at issue. Given that the post-conviction court found the Petitioner not credible, the court concluded that he lacked standing and, therefore, that counsel was not ineffective for failing to challenge the search. We note, as did the post-conviction court in its written order, that the Petitioner offered no evidence of his claim except his own testimony, and we cannot say that the evidence preponderates against the finding of the post-conviction court. Therefore, the Petitioner has failed to show that he was prejudiced by counsel's failure to challenge the search.

As to counsel's failure to challenge the qualifications of Lieutenant MacKall as an expert witness or the prejudicial effect of his testimony, the post-conviction court accredited counsel's testimony that his decision not to object to the officer's testimony could be attributed to trial strategy. On appeal, this court may not second-guess the tactical or strategic choices of counsel unless those choices are based upon inadequate preparation, nor may we measure counsels' behavior by "20-20 hindsight." See State v. Hellard, 629 S.W.2d 4, 9 (Tenn. 1982). Moreover, "[a]llegations of ineffective assistance of counsel relating to

matters of trial strategy or tactics do not provide a basis for post-conviction relief." <u>Taylor v. State</u>, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991).

In any event, Tennessee Rule of Evidence 702 provides, "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." At the evidentiary hearing, Lieutenant MacKall described his qualifications and experience, and trial counsel acknowledged that Davidson County judges routinely qualified the officer as an expert. Therefore, the Petitioner has failed to show that, had counsel challenged the officers qualifications, the trial court would have determined that the officer was not qualified to testify as an expert in narcotics investigations. Regarding the prejudicial effect of the officer's testimony, Tennessee Rule of Evidence 403 provides that even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Obviously, the officer's testimony was prejudicial. However, it was also relevant to explain why the officers would have been unable to find any evidence of the cocaine in the toilet. As a result, the Petitioner has failed to show that the probative value of Lieutenant MacKall's testimony was substantially outweighed by the danger of unfair prejudice and, therefore, that counsel was deficient for failing to raise that argument at trial.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the post-conviction court's denial of he petition for post-conviction relief.

_____
NORMA McGEE OGLE, JUDGE